UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN KRAKOWSKI, ) | |
| KEVIN HORNER, and ) | |
| M. ALICIA SIKES, individually, and ) | |
| on behalf of those similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 4:12-CV-00954-JAR |
| ) | |
| AMERICAN AIRLINES, INC., and ) | |
| ALLIED PILOTS ASSOCIATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Allied Pilots Association ("APA")'s Motion to Dismiss [ECF No. 9], Defendant American Airlines, Inc. ("American")'s Motion to Transfer this Action to the United States Bankruptcy Court for the Southern District of New York [ECF No. 13], and Defendant APA's Motion For Leave to File Supplemental Memorandum in Support of Defendant American's Motion to Transfer [ECF No. 20].[1] The Court heard oral argument on

---

[1] In its Supplemental Memorandum, APA advises the Court that two groups of former TWA pilots filed objections in the Bankruptcy Court to American's renewed motion pursuant to 11 U.S.C. § 1113 to reject its collective bargaining agreement with APA. In addition, one of the two groups has joined the other parties to the bankruptcy proceeding in a stipulation to coordinate the appeals from the Bankruptcy Court's Orders. One of the named Plaintiffs in this action (Alicia Sikes) is a member of the group appealing in the Bankruptcy Court. (Doc. No. 21) The Court can take judicial notice of the bankruptcy proceedings and the documents filed therein. Quick v. Formula Telecom, Inc., 2011 WL 572513, * 1 n.4 (E.D. Mo. Feb. 15, 2011) (citing Stutzka v. McCarville, 420 F.3d 757, 760 n. 2 (8th Cir. 2005). Thus, APA's motion for leave to file its supplemental memorandum will be granted.

the motions on December 11, 2012. At the hearing, Plaintiffs moved to stay this case pending arbitration. The Court granted the parties an opportunity to submit additional briefing on Plaintiffs' oral motion. Plaintiffs filed their Memorandum in Support of their Motion For Stay on December 26, 2012. (Doc. No. 31) On January 9, 2013, APA filed its Response to Plaintiffs' Motion for Stay (Doc. No. 33) and American filed its Opposition to Plaintiffs' Motion. (Doc. No. 34) Plaintiffs filed a Reply on January 15, 2013. (Doc. No. 35) The motions are now fully briefed and ready for disposition.

**Background**

By way of background, American acquired TWA in April 2001. Plaintiffs are former TWA pilots who currently fly for American. In November 2001, American and APA negotiated a modification to the APA/American collective bargaining agreement to incorporate the former TWA pilots into American's pre-existing pilot seniority list (Supplement CC). While this modification did not give the majority of former TWA pilots credit for the seniority they had accrued at TWA, provision was made for a "protective fence", which guaranteed the pilots a specified number of Captain positions in St. Louis as well as preferential bidding rights for former TWA First Officers in St. Louis. The fence effectively reserved most of the flying in St. Louis to former TWA pilots.

In November 2011, American filed for bankruptcy in the Southern District of New York. This case is pending.[2] In February 2012, as part of American's reorganization, American and APA negotiated a new collective bargaining agreement that included provisions regarding the closing of the St. Louis pilot base and interest arbitration to determine the terms and conditions

---

[2] In re AMR Corp., Case No. 11-15463 (SHL) (Bkrtcy.S.D. N.Y.)

that will substitute for Supplement CC. It was further agreed that the arbitrators would have no jurisdiction to modify the existing pilot seniority list.

Plaintiffs filed this Class Action Complaint for Damages and Declaratory Relief in May 2012. Count I alleges APA breached its duty of fair representation (DFR) by agreeing to an interest arbitration that was precluded from modifying American's pilot system seniority list. Plaintiffs further allege in Count II that American colluded in this breach.

APA moves to dismiss Plaintiffs's DFR claim as barred by the doctrines of res judicata, collateral estoppel, and ripeness. Specifically, APA contends that the question of whether it breached its duty by failing to negotiate for the return of seniority accrued at TWA has already been litigated and lost in a previous action brought by a class of former TWA pilots in Bensel v. Allied Pilots Assoc., 271 F.Supp.2d 616 (D.N.J. 2003), *aff'd*, 387 F.3d 298 (3d Cir. 2004), *cert. denied*, 544 U.S. 1018 (2005). (Doc. No. 10, pp. 6-8) Alternatively, APA argues that any claims Plaintiffs might have involving the results of interest arbitration cannot be ripe until the arbitration is conducted and concluded. (Id., pp. 10-12) (see also Doc. No. 33, p. 2)

American moves to transfer this action to the United States Bankruptcy Court for the Southern District of New York based on the interests of justice and convenience of the parties. American argues this dispute is "intricately related" to American's reorganization and the Bankruptcy Court is already familiar with the issues raised by Plaintiffs here. (Doc. No. 14, p. 6)

Plaintiffs move the Court to stay these proceedings pending arbitration since the arbitration could produce an outcome acceptable to Plaintiffs that would moot their case. Plaintiffs contend that under similar circumstances, courts have entered stays pending related arbitration proceedings. See, e.g., Fox v. Career Educ. Corp., 2012 WL 1205155 (E.D. Mo. April

11, 2012); Barton Enterprises, Inc. v. Cardinal Health, Inc., 2010 WL 2132744 (E.D. Mo. May 27, 2010); Davis v. Sprint Nextel Corp., 2012 WL 5904327 (W.D. Mo. Nov. 26, 2012). (Doc. No. 31, p. 4)

**Discussion**

**APA's Motion to Dismiss**

In ruling on a motion to dismiss, the Court must view the allegations in the complaint liberally in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir.2008) (citing Luney v. SGS Auto Servs., 432 F.3d 866, 867 (8th Cir.2005)). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir.2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted "only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir.2004). The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his or her claim. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995).

In support of its motion, APA argues Plaintiffs are attempting to relitigate their DFR claim, which is barred by the judgment entered in its favor in Bensel, 271 F.Supp.2d 616. (Doc.

10, p. 9) There, a class of former TWA pilots alleged APA breached its duty of fair representation to the class once they became subject to Supplement CC on April 3, 2002[3] by failing to require American to maintain the status quo as to the working conditions of the class, including seniority.[4] The district court dismissed that claim on the following grounds:

> While there are allegations that APA has breached its [duty of fair representation] obligations since April 3, 2002, these allegations are either too general in nature to specify any actual DFR breach, or simply state that APA "continues to this day to fail to negotiate a fair and equitable integration of the TWA pilots." As there was nothing to negotiate once Supplement CC became effective, this allegation fails to state any DFR breach.

Bensel, 271 F.Supp.2d at 625. The Third Circuit affirmed, finding the imposition of Supplement CC on the class on April 3, 2002 did not constitute a change in the status quo. Bensel, 387 F.3d at 316. Pursuant to the parties' facilitation agreement, the class consented to be bound by the terms of the American/APA collective bargaining agreement, including Supplement CC, at the time the NMB certified APA as the bargaining representative for the entire class. Id. Thus, the court determined that Supplement CC provided the status quo terms for the class.

Bensel is distinguishable from the instant case based on the recent negotiations between APA and American for a new pilot collective bargaining agreement, which was approved by the Bankruptcy Court on December 19, 2012. See In re AMR Corp., No. 11-15463 (SHL) (Bankr.

---

[3] On April 3, 2002, the National Mediation Board (NMB) certified APA as the sole bargaining agent for all American pilots (including the former TWA pilots) and Supplement CC became effective. Bensel, 271 F.Supp.2d at 621.

[4] The "status quo" provisions of the Railway Labor Act (RLA), 45 U.S.C. § 151, et seq., directs that while the major dispute resolution procedures are being followed, "rates of pay, rules or working conditions shall not be altered by the carrier until the controversy has been finally acted upon as required by [the RLA] . . ." 45 U.S.C. § 156. See also § 152, which provides that "[n]o carrier . . . shall change the rates of pay, rules, or working conditions of its employees . . . except in the manner prescribed in [collective bargaining] agreements or in section 156 of this title." Bensel, 387 F.3d at 315.

5

S.D.N.Y.) (ECF No. 5800). Plaintiffs specifically allege that APA acted in bad faith, and in an arbitrary and discriminatory manner towards the former TWA pilots in reaching its new agreement with American. Because the instant case involves a new and different collective bargaining agreement than the one at issue in Bensel, the Court finds the judgment entered for APA in Bensel has no preclusive effect in this case. APA's res judicata and collateral estoppel arguments will, therefore, be denied.

In further support of its motion to dismiss, APA argues that its agreement that the interest arbitrators will not have jurisdiction to modify the existing seniority list merely continues a policy that has been in place since April 2002. Thus, Plaintiffs' claim is barred by the six-month statute of limitations for DFR claims. Delcostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 170 (1983). (Doc. No. 10, p. 10)

Plaintiffs allege APA breached its duty in February 2012 when it agreed American could close the St. Louis base, eliminate Supplement CC without restoring the former TWA pilots' seniority, and refer the matter to an "issue arbitration" where the arbitrator will be powerless to modify the TWA pilots' seniority. Plaintiffs argue their claim accrued at that time, when the seniority remedy was taken off the table, even though the agreement has not yet been implemented and the arbitration has not taken place, and cite Propst v. Association of Flight Attendants, 330 Fed.Appx. 304 (2d Cir. 2009). (Doc. No. 11, p. 9) In Propst, the court found the plaintiff flight attendants "knew or reasonably should have known" about any breach in December 2002 when their employer and union entered into an agreement amending the terms of employment, even though the employer had not then begun operations, and dismissed their February 2006 complaint as untimely. Id. at 305. Plaintiffs also cite Ramey v. District 141,

Intern. Ass'n of Machinists and Aerospace Workers, 378 F.3d 269 (2d Cir. 2004), where the court held that plaintiff airline mechanics' cause of action against its union for breach of the duty of fair representation accrued when the union advocated a position on the seniority issue to employer USAir. Id. at 279-80. Because the court concluded that the union had not met its burden to demonstrate that plaintiffs' claim was time-barred, it did not address "the difficult and unsettled question of how certain it must be that harm will be caused by a union's breach in order to trigger the statute of limitations." Id. at 280 n.5. The Ramey court instructed that "we have held that the statute of limitations is triggered even if it is not absolutely certain that a union member will be harmed by a breach," id., citing Santos v. District Council of New York City and Vicinity of United Broth. of Carpenters and Joiners of America, AFL-CIO, 619 F.2d 963 (2d Cir. 1980).

A motion to dismiss should be granted only if the complaint on its face is conclusively time-barred and "no reasonable person could disagree on the date" on which the cause of action accrued. Metropolitan St. Louis Equal Housing Opportunity Council v. Tillman, 2007 WL 3046585, at *1 (W.D. Mo. Oct. 16, 2007). As discussed above, whether Plaintiffs' DFR claim has accrued is a "difficult and unsettled question," and the Court has acknowledged the dilemma faced by Plaintiffs in deciding to file their action now as opposed to awaiting the outcome of the interest arbitration. (Transcript of Motion Hearing ("Tr."), Doc. No. 32, 26:18-24). In any event, after liberally construing the complaint in a light most favorable to Plaintiffs, the Court cannot conclude as a matter of law that Plaintiffs' claim is time barred. For the foregoing reasons, APA's motion to dismiss will be denied.

**American's Motion to Transfer/Plaintiffs' Motion for Stay**

"[A] district court may transfer a case or proceeding under Title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Likewise, in considering a motion for stay, a district court should consider both the interest of judicial economy and the potential prejudice or hardship to the parties. Toppins v. 3M Co., 2006 WL 12993, at *1 (E.D. Mo. Jan. 3, 2006) (citing Rivers v. Walt Disney, 980 F.Supp. 1358, 1360 (C.D. Cal. 1997)).

In support of its motion to transfer and in opposition to Plaintiffs' motion to stay, American states that generally, "the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction, because speedy and economic administration of cases is a paramount consideration in the bankruptcy process." In re Vital Link Lodi Inc., 240 B.R. 15, 19 (Bankr. W.D. Mo. 1999). For this reason, there is a "strong presumption in favor of placing venue in the district court where the bankruptcy case is pending. Quick v. Viziqor Solutions, Inc., 2007 WL 49424, at *3 (E.D. Mo. Feb. 12, 2007) (citations omitted). American argues this case should be transferred to the Bankruptcy Court because Plaintiffs' claims concerning the modification of their seniority and job bidding rights under the collective bargaining agreement are directly related to the process initiated by American in the Bankruptcy Court under Section 1113.[5] (Doc. No. 14, pp. 6-7) In addition, American maintains that transferring this case would promote economy and efficiency in the administration of its pending reorganization by decreasing the amount of duplicated effort for the parties and the Court

---

[5] When American filed its motion to transfer on August 10, 2012, the Bankruptcy Court had not yet ruled on its Section 1113 motion. In its August 15, 2012 decision denying American's section 1113 motion, the Bankruptcy Court deemed the former TWA pilots' DFR claims to be "premature." In re AMR Corp., No. 11-15463 (SHL) (ECF No. 4044, at p. 105 n.72). On September 5, 2012, the Court granted American's renewed Section 1113 motion, authorizing it to reject its collective bargaining agreement with APA. Id. (ECF No. 4293).

8

and avoiding potentially inconsistent rulings from the two courts. (Id., p. 8)

Finally, American notes that two groups of former TWA pilots intervened in its bankruptcy proceedings to assert, by way of objections to American's Section 1113 motion, the same claims Plaintiffs are seeking to litigate here, i.e., that the interest arbitration process is "an actionable breach of the APA's duty of fair representation, for which American is jointly liable…." (Id., pp. 10-12) (See also American's Supplemental Memorandum, Doc. No. 19, and Opposition to Plaintiffs' Motion for Stay, Doc. No. 34, pp. 7-8) It is American's position that the Bankruptcy Court considered, and rejected, the pilots' objections in ruling on its Section 1113 motion. (Doc. No. 34, p. 7)

When American then filed its motion with the Bankruptcy Court to approve the new collective bargaining agreement with APA, former TWA pilots filed objections to that motion, asserting the same claim Plaintiffs are pursuing in this Court, that is, that "[t]he elimination of Supp CC, together with the proposed 'interest arbitration,' amounts to an actionable breach of the APA's duty of fair representation that American is jointly liable for by reason of its knowing collusion in that breach…." (Id., pp. 7-8) American contends that in approving the new collective bargaining agreement on December 19, 2012, the Bankruptcy Court clearly considered the same DFR claims Plaintiffs are asserting in this Court. (Id., pp. 8-9) The Bankruptcy Court addressed the legal standard for DFR claims set forth in Airline Pilots Ass'nm Intern. v. O'Neill, 499 U.S. 65, 78 (1991), and found the settlement reached by American and APA in the new collective bargaining agreement "reflect the bargains struck between parties who are very well represented." (Id. at 8, citing transcript of December 19, 2012 hearing ("Bankr. Tr."), Doc. No. 34-1, p. 74-75). The Bankruptcy Court further found the provisions "were all heavily negotiated and represent

appropriate compensation for . . . the pilots as well as significant concessions." (Id., citing Bankr. Tr., p. 75)

Moreover, the Bankruptcy Court specifically retained jurisdiction "to hear and determine all matters arising from the interpretation and/or implementation" of its December 19 order. (Doc. No. 34, p. 10) American argues that should the Bankruptcy Court determine that Plaintiffs' DFR claims are not foreclosed by its December 19 order, or the Court's prior orders concerning American's section 1113 motion, then the DFR claims can be litigated in an adversary proceeding before the Bankruptcy Court. See In re Manville Forest Products Corp., 47 B.R. 140 (Bankr. S.D.N.Y. 1985) (resolving duty of fair representation claim in bankruptcy court). (Id.)

In opposition to American's motion to transfer, Plaintiffs contend there is nothing pending before the Bankruptcy Court that relates to the St. Louis base closure or their fair representation claim, and that the Bankruptcy Court has not actually addressed the arguments Plaintiffs are asserting here. (Doc. No. 15, pp. 4-5; Doc. No. 31, p. 6) In support of their motion to stay, Plaintiffs argue this Court is the more convenient forum for Plaintiffs and the class of former TWA pilots, since they all work here, many of them live here, and their chosen counsel is here. (Doc. No. 15, p. 5-7; Doc. No. 31, p. 3) In addition, Plaintiffs argue New York has no connection to the case because the sources of proof in this case are located in St. Louis and Fort Worth;. (Id., p. 7)

American replies that neither the location of the pilot base in St. Louis, nor the location of the former TWA pilots, has any bearing on the challenged negotiations or representational issues. (Id., pp. 7-8) Rather, all negotiations were undertaken in connection with American's section 1113 motion in the Bankruptcy Court. (Id., p. 9) Moreover, courts have declined to consider

10

similar allegations concerning the residence of putative class members, or the location of counsel, when ruling on a motion to transfer. See, e.g., Childs v. Unified Life Insurance Co., 2010 WL 200057, at *2 (W.D. Okla. Jan. 13, 2010). (Doc. No. 17, p. 8)

On March 1, 2013, Plaintiffs requested a Rule 16 conference. (Doc. No. 36) No Rule 16 conference was scheduled in this matter because of the pending motions and because the Court was monitoring the progress of American's proceedings in the Bankruptcy Court. Now, after careful consideration of the interests in this case, it is the Court's opinion that the Bankruptcy Court is the proper and most efficient forum for litigation of Plaintiffs' claims. There is currently an agreement in place setting hearing dates for the interest arbitration in April and May, and requiring a decision no later than June 1, 2013. Moreover, a group of former TWA pilots arguably part of Plaintiffs' class is already before the Bankruptcy Court, having joined the other parties to the bankruptcy proceedings to appeal the Bankruptcy Court's orders. The record demonstrates the Bankruptcy Court is completely familiar with the facts and evidence pertaining to the issues raised by Plaintiffs in this case. Any issues Plaintiffs believe remain to be litigated are best decided by the Bankruptcy Court in the context of the larger reorganization and consistent with its own prior orders. Indeed, counsel for Plaintiffs acknowledged during oral argument that they could assert their DFR claim in the approval process with respect to the new collective bargaining agreement, or alternatively, in an adversary proceeding in the bankruptcy. (Tr. 17:18-25; 18:1)

As to the convenience of the parties, the Court is mindful that a plaintiff's choice of forum is given a great deal of deference. See Lipari v. U.S. Bancorp, 2007 WL 1063178, at * (W.D. Mo. April 4, 2007). However, the balance of interests in this case weigh strongly in favor of transfer, due to the pending bankruptcy action in New York. See May Dep't Stores Co. v. Wilansky, 900

f.Supp. 1154, 1166 (E.D. Mo. 1995) ("Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplicitous litigation and inconsistent results.").

For the foregoing reasons, Plaintiffs' motion to stay and request for Rule 16 conference will be denied and American's motion to transfer will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Allied Pilots Association's Motion to Dismiss [9] is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs' oral motion for stay is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' request for Rule 16 conference is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Allied Pilots Association's Motion for Leave to File Supplemental Memorandum in Support of Defendant American Airlines' Motion to Transfer [20] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant American Airlines, Inc.'s Motion to Transfer [13] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall take all necessary administrative steps to transfer this case to the United States Bankruptcy Court for the Southern District of New York.

Dated this 4th day of March, 2013.

                                                                                 _____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE